J. Howard Rossbach, J.
Defendant moves to set aside Ms plea of “ guilty” and a fine of $15. He apparently appeared before me on May 22, 1964, in The Bronx Night Traffic Court, pleaded “ guilty ” to a charge of speeding and was fined accordingly. This conviction has acquired added significance by virtue of a subsequent speeding conviction. Unless defendant can upset the instant case, he loses his driver’s license. We are told that his livelihood hinges on its retention.
Defendant now claims that he was not advised of his right to counsel and that he was practically forced into a plea of guilty by the speed of the court process and ‘ ‘ the press of the huge crowd of defendants.” He does not offer the minutes of his hearing, but this is understandable. There are none. No stenographer was assigned to Night Traffic Court on the night in question. „
*783 Lacking the minutes, I frankly have not the faintest idea of what I did do or perhaps failed to do. Even if I did not tell defendant of his right to counsel, this would not require the reopening of a traffic infraction. (People v. Letterio, 16 N Y 2d 307 [1965].) As for the speed of the judicial process and the ‘ ‘ huge crowd ’ ’, the Clerk tells me that on the night of May 22 I had to handle 225 cases in slightly over 3 hours. This meant that I was limited to less than one minute per case. This is the type of high pressure upon court and litigant alike which was recently criticized by Justice Bebuaud Botein in his outstanding address to the New York State Bar Association “ The Case Against Instant Justice ” (N. Y. L. J., Feb. 7, 1966, p. 1, col. 1). While I join wholeheartedly in this condemnation of “ go-go-go Justice ”, without minutes I cannot say or presume that defendant did not get a fair hearing.
This brings us to the nub of the case — the minutes. Able counsel argues that we were not a constitutional court since no stenographer was present. The New York State Constitution (art. VI, § 1, subd. b) provides that inter alia: “ the * * * court of * * * criminal jurisdiction of the city of New York * * * shall be courts of record. ’ ’
When we look to the definition: “ a court of record is 1 a court where the acts and proceedings are enrolled in parchment for a perpetual memorial ’ ” (The Thomas Fletcher, 24 F. 481, 482 [1884].) In The Bronx on May 22, 1964, the court had neither parchment nor scrivener. The most frequent explanation for this unhappy situation that we have heard is that the ‘ ‘ lower court ” cannot afford such nocturnal luxuries. In view of the fact that over $2,000 in fines were collected that night, the explanation is on the quavery side. In any event, justice is an evanescent substance not measurable in dollars and cents.
We do not care to characterize the type of court over which we were required to preside, but surely it was not a * ‘ court of record ” within the constitutional mandate. Under these circumstances its proceedings are voidable in the discretion of the presiding Judge. (People v. Foreman, 13 A D 2d 500 [1961]; People v. Minimi, 21 A D 2d 811 [1964],)
In view of the serious consequences to the defendant, the motion to set aside the plea and to remit the fine is granted.